UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Renae A. L.,[1]

        Plaintiff,

v.

Leland Dudek, Acting Commissioner of
Social Security,

        Defendant.

Case No. 23-cv-3766 (JFD)

**ORDER**

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Renae A. L. seeks judicial review of a final decision by the Defendant Acting Commissioner of Social Security, which denied Plaintiff's application for disability insurance benefits ("DIB"). The matter is now before the Court on Plaintiff's Brief (Dkt. No. 10), Defendant's Brief (Dkt. No. 13), and Plaintiff's Reply (Dkt. No. 14).

Plaintiff argues that the final decision should be reversed on two grounds. First, Plaintiff contends the administrative law judge ("ALJ") who authored the decision did not properly consider the opinion of Plaintiff's mental health provider, Rebecca Moore. Second, Plaintiff argues the ALJ failed to properly consider the prior administrative medical findings of the state agency consultants, Dr. King Leong and Dr. Andrea Paulson. The Commissioner asks the Court to affirm the final decision in all respects. As set forth

---

[1] The District of Minnesota has adopted a policy of using only the first name and last initial of nongovernmental parties in Social Security cases.

fully below, the Court finds that the ALJ erred in considering the prior administrative medical findings of the state agency consultants. The Court therefore reverses the final decision and remands the matter for further administrative proceedings.

**I.      Background**

People with disabilities can qualify for financial support from the Social Security Administration ("SSA") through one or both of its assistance programs: the Disability Insurance ("DIB") Program under Title II of the Social Security Act and the Supplemental Security Income ("SSI") Program under Title XVI of the Act. *Smith v. Berryhill*, 587 U.S. 471, 475 (2019) (citing *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988)). Relevant here, DIB is a program that provides support to those who worked and had sufficient social security taxes withheld from their pay over their working life to qualify for coverage if they become disabled. *Id.*; 42 U.S.C. § 423(a) (guaranteeing benefits for insured disabled people).

Plaintiff filed for DIB on July 21, 2021, alleging she became disabled on December 31, 2018. (*See* Soc. Sec. Admin. R. (hereinafter "R.") 95.)[2] This disability onset date—December 31, 2018—was also Plaintiff's "date last insured."[3] (R. 252.) Plaintiff's alleged impairments included "fibromyalgia; migraines; carpal tunnel syndrome; degenerative disc

---

[2] The Social Security administrative record is filed at Dkt. No. 4. The record is consecutively paginated on the lower right corner of each page, and the Court cites to those page numbers.

[3] To succeed on her DIB claim, Plaintiff must show that she became disabled on or before her "date last insured." *See Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998).

disease of the cervical and lumbar spine; obesity; bipolar disorder; anxiety; and post-traumatic stress disorder (PTSD)." (*See* R. 20.)

    A.    **Relevant Facts**[4]

        1.    **Ms. Moore's Opinion and Evidence of Plaintiff's Mental Impairments Near the December 31, 2018 Alleged Onset Date and Date Last Insured**

As the ALJ stated, "the relevant period is narrow, as the alleged onset date and the date last insured are the same date of December 31, 2018." (R. 27.) More than eight months after December 31, 2018, Plaintiff began mental health treatment with Rebecca Moore, R.N. (R. 3357.) On May 25, 2022—more than three and a half years after Plaintiff's date last insured—Ms. Moore completed a Mental Impairment Questionnaire. Ms. Moore wrote that long-haul COVID symptoms had worsened Plaintiff's psychiatric symptoms,[5] that Plaintiff demonstrated ongoing personality disorder symptoms "including dependence on others for life necessities and unhealthy relationship patterns," and that PTSD was "also problematic when triggered." (R. 3357.) Ms. Moore identified as supporting clinical findings garbled speech, disorganized speech, and short-term memory impairment. (R. 3357.) She indicated that Plaintiff would be markedly limited in understanding, remembering, or applying information; extremely limited in maintaining concentration, persistence, or pace; and extremely limited in adapting or managing herself. (R. 3365.)

---

[4] The Court limits its summary of relevant facts to the issues presented for judicial review.

[5] Plaintiff contracted COVID in July 2020. (R. 2742.)

3

Treatment records from providers other than Ms. Moore shed light on the status of Plaintiff's mental impairments on December 31, 2018. Plaintiff attended a psychotherapy and medication-management appointment with Shirshendu Sinha, M.B.B.S., M.D., on October 10, 2018. (R. 1122.) She reported anxiety with symptoms of chest pain, a depressed mood, and shortness of breath. (R. 1122.) Other symptoms included fatigue, sleeping problems, and chronic pain. (R. 1123.) Plaintiff told Dr. Sinha that bronchitis was causing her fatigue, that her overall mood was stable, that she was less irritable, that overall "she has been doing okay," and that her anxiety had improved. (R. 1125.) A review of systems was positive for depressed mood, fatigue, shortness of breath, chest pain, PTSD, little interest or pleasure in doing things, feeling down and hopeless, and feeling nervous or anxious. (R. 1126.) According to Dr. Sinha's evaluation, Plaintiff met the diagnostic criteria for bipolar disorder and PTSD. (R. 1123.) Plaintiff did not agree with the bipolar disorder diagnosis, however, and would not take the medication prescribed for it. (R. 1123.) Mental status examination findings included normal speech, normal language, a full affect, intact associations, no thoughts of suicide, organized and goal-directed thought processes, limited insight and judgment (due to ceasing bipolar medication on her own), fair concentration and attention, no major concerns with recent or remote memory, a fair fund of knowledge, and orientation to time and place. (R. 1131.)

Plaintiff saw Janet Kvislen, R.N., on December 18, 2018, for anxiety, bipolar disorder, and PTSD. (R. 1102.) Plaintiff reported subjective symptoms of increased anxiety, intermittent depression and anhedonia, low energy, variable appetite, and trouble with concentration. (R. 1105.) She attributed the increased anxiety to the holiday season.

4

(R. 1105.) Plaintiff reported that her PTSD was well-controlled with medication. (R. 1105.) A review of systems was positive for depressed mood, fatigue, shortness of breath, chest pain, nausea, PTSD, little interest or pleasure in doing things, feeling down and hopeless, and feeling nervous or anxious. (R. 1105.) Mental status examination findings included normal speech, normal language, an anxious mood (attributable to the holiday season), a full affect, intact associations, no thoughts of suicide, organized and goal-directed thought processes, limited insight and judgment, fair concentration and attention, no major concerns with recent or remote memory, a fair fund of knowledge, and orientation to time and place. (R. 1110–11.)

A progress note from a December 27, 2018 appointment for pain management includes mental status examination findings that Plaintiff was alert and oriented, with a normal affect and mood. (R. 1101.) The provider wrote that Plaintiff was ready to learn, had no apparent learning barriers, and understood the assessment and plan. (R. 1101.)

Plaintiff returned to Dr. Sinha for psychotherapy and medication management on February 22, 2019. (R. 1059.) She reported doing well overall, feeling less depressed and anxious, and experiencing some difficulty with concentration and attention. (R. 1062.) The psychiatric review of symptoms was positive for nausea. (R. 1062.) Mental status examination findings included normal speech, normal language, a "good" mood, a full affect, intact associations, no thoughts of suicide, organized and goal-directed thought processes, limited insight and judgment, fair concentration and attention, no major concerns with recent or remote memory, a fair fund of knowledge, and orientation to time

and place. (R. 1110–11.) Dr. Sinha wrote that Plaintiff was doing well, did not feel depressed, and felt less anxious. (R. 1068.)

> **2. Prior Administrative Medical Findings and Evidence of Plaintiff's Right-Hand Limitations Near the December 31, 2018 Alleged Onset Date and Date Last Insured**

At the initial stage of the administrative disability determination, state agency consultant Dr. King Leong opined, in relevant part, that Plaintiff was limited to occasional gross manipulation and occasional fine fingering with her right hand. (R. 89.) As support for these limitations, Dr. Leong cited Plaintiff's history of carpal tunnel release surgery on her right hand. (R. 89.)

At the reconsideration level of administrative review, state agency consultant Dr. Andrea Paulson opined, in relevant part, that Plaintiff was capable of frequent gross manipulation and frequent fine fingering with her right hand. (R. 102.) As support for these limitations, Dr. Paulsen also cited Plaintiff's history of carpal tunnel release surgery on her right hand. (R. 89.)

Plaintiff had carpal tunnel release surgery on her right hand on March 17, 2016. (R. 627.) Six weeks after the surgery, she reported "doing well" and her numbness and tingling had completely resolved. (R. 1813.) Dr. Scott Perkinson noted she had a full range of motion. (R. 1813.) About a year after the surgery, Plaintiff described it as "successful." (R. 1608.)

On December 27, 2018—four days before the December 31, 2018 alleged onset date and date last insured—Plaintiff saw nurse Nikki Stoffel-Lowis for low back and neck pain.

(R. 1099.) She described "some squeezing affects in her upper arms which do not extend blow her elbow." (R. 1099.) Plaintiff did not report any hand symptoms.

On February 6, 2019—not long after the December 31, 2018 alleged onset date and date last insured—Plaintiff attended an appointment with Dr. Anila Adhami for treatment of pain. (R. 1082–83.) Plaintiff described pain in her neck, upper body, and upper arms, but not her hands. (R. 1088.) Plaintiff did not report any symptoms related to her hands.

**B.   Procedural History**

Plaintiff's DIB application was denied at both the initial and reconsideration stages of review. She requested an administrative hearing before an ALJ, which was held on May 2, 2023. The ALJ issued a written decision on May 19, 2023, finding that Plaintiff was not disabled. (R. 15–29.) The ALJ followed the familiar five-step sequential analysis described in 20 C.F.R. § 404.1520 in making that determination.[6] At each step, the ALJ considered whether Plaintiff was disabled based on the criteria of that step. If she was not, the ALJ proceeded to the next step. *See* 20 C.F.R. § 404.1520(a)(4).

The ALJ determined at the first step that Plaintiff had not engaged in substantial gainful activity between her alleged onset date of December 31, 2018 through her date last insured of December 31, 2018. (R. 20.) At the second step, the ALJ found Plaintiff had the following severe impairments: fibromyalgia, migraines, carpal tunnel syndrome,

---

[6] The five steps are "(1) whether claimant is engaged in substantial gainful activity, (2) whether claimant has a severe impairment, (3) whether the impairment meets or equals the severity of a listed impairment, (4) whether claimant has the residual functional capacity to perform past relevant work activity, and (5) if claimant is unable to do past work, whether claimant can perform other work." *Delph v. Astrue*, 538 F.3d 940, 946 (8th Cir. 2008) (citing *Smith v. Shalala*, 987 F.2d 1371, 1373 (8th Cir. 1993)).

degenerative disc disease of the cervical and lumbar spine, obesity, bipolar disorder, anxiety, and PTSD. (R. 20.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. (R. 19.)

Between steps three and four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), which is a measure of "the most [Plaintiff] can still do despite [Plaintiff's] limitations." 20 C.F.R. § 404.1545(a)(1). As part of this assessment, the ALJ considered Ms. Moore's opinion and Plaintiff's right-hand limitations.

The ALJ deemed Ms. Moore's opinion not persuasive because Ms. Moore had not begun treating Plaintiff until August 2019, which was "many months" after the December 31, 2018 alleged onset date/date last insured. (R. 27.) In addition, the ALJ found "treatment records during the relevant time period are not consistent with marked or extreme function limitations." (R. 27.)

The ALJ's full discussion of Dr. Leong's and Dr. Paulson's prior administrative medical findings follows.

> State agency consultant King Leong, MD reviewed the evidence of record in November 2021 and concluded the claimant was limited to a reduced range of light work with additional postural and environmental limitations (1A). On reconsideration, Andrea Paulson, MD reviewed the evidence of record in January 2022 and generally agreed with the initial assessment but added frequently handle/finger on the right (3A). These statements are not fully persuasive. While the limitation to frequent right sided handling and fingering is supported by treatment history, further limitation to occasional handle/finger is not supported as the record does not show ongoing complaints or positive findings on exam after the claimant['s] 2016 CTS release on the right. However, the record does support [an] overhead reaching limitation based on records in early 2019 showing cervical pain and

> allegations regarding difficulty lifting arms. The limits on balance, climb ramps/stairs are not explained or supported in the record.

(R. 26.)

Ultimately, the ALJ determined that Plaintiff had the RFC

> to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except occasionally stoop, crawl, and climb ladders, ropes, and scaffolds; frequently kneel or crouch; frequent exposure to extreme cold, vibration, and hazards such as unprotected heights and moving mechanical parts; occasionally reach overhead, bilaterally; frequently handle and finger with the right hand; limited to occasional interactions with supervisors, coworkers, and the general public; carry out detailed but not complex instructions; and could not perform work requiring a specific production rate such as assembly line work or work that required hourly quotas.

(R. 23.)

Proceeding to step four in the sequential evaluation, the ALJ considered whether Plaintiff could perform her past relevant work as a registered nurse or head nurse, given the RFC that the ALJ assessed. (R. 27.) The ALJ determined that Plaintiff could not perform this work. (R. 27.) Thus, the ALJ proceeded to step five to consider whether jobs existed in the national economy that Plaintiff could perform, based on her age, education, work experience, and RFC. Relying on hearing testimony from a vocational expert, the ALJ concluded that Plaintiff could work as an office helper, housekeeper, or classifier. (R. 28.) Therefore, Plaintiff was not disabled as defined by the Social Security Act for the time period from December 31, 2018 through December 31, 2018. (R. 28.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. 1.) This made the ALJ's decision the final decision of the Commissioner for the purpose of judicial review.

## II. Legal Standards

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or if the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability, the claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

### III. Discussion

#### A. The ALJ Adequately Considered and Articulated the Persuasiveness of Ms. Moore's Opinion.

Plaintiff argues that the ALJ's consideration of the persuasiveness of Ms. Moore's opinion did not comply with 20 C.F.R. § 404.1520c. Under 20 C.F.R. § 404.1520c, when a medical source provides a medical opinion, the ALJ must consider the persuasiveness of the opinion "using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. § 404.1520c(a). Those five factors are supportability, consistency, relationship with the claimant, specialization, and any other relevant considerations. 20 C.F.R. § 404.1520c(c)(1)–(5). The two most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). "The ALJ need not use the magic words of 'supportability' and 'consistency,' but it must be clear they were addressed." *Svendsen v. Kijakazi*, No. 1:21-CV-1029-CBK, 2022 WL 2753163, at *8 (D.S.D. July 14, 2022). The ALJ "may, but [is] not required to," explain how the remaining factors were considered. 20 C.F.R. § 404.1520c(b)(2). The ALJ's failure to articulate how the ALJ considered the consistency factor or the supportability factor is a legal error that requires remand. *Susan H. v. Kijakazi*, No. 21-CV-2688 (ECT/ECW), 2023 WL 2142786, at *3 (D. Minn. Feb. 21, 2023); *Michael B. v. Kijakazi*, No. 21-CV-1043 (NEB/LIB), 2022 WL 4463901, at *2 (D. Minn. Sept. 26, 2022); *Joel M. B. v. Kijakazi*, No. 21-CV-1660 (PAM/ECW), 2022 WL 1785224, at *3 (D. Minn. June 1, 2022) (citing *Lucus v. Saul*, 960 F.3d 1066, 1070 (8th Cir. 2020)).

An ALJ assesses supportability by analyzing how well the medical source's opinion is justified by that source's use of objective medical evidence. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

An ALJ assesses consistency by considering that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). That is, the ALJ evaluates whether the medical opinion at issue is consistent with evidence from sources other than the source who rendered the opinion. 20 C.F.R. § 404.1520c(c)(2).

The ALJ must not only *consider* the regulatory factors, but must also *articulate* that consideration. 20 C.F.R. § 404.1520c(a) ("We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section."); 20 C.F.R. § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."). Given that the supportability and consistency factors are the most important factors to the persuasiveness determination, an ALJ "*will explain* how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(b)(2) (emphasis added).

The Court finds here that the ALJ adequately considered both the consistency and the supportability factors as they applied to Ms. Moore's opinion, and substantial evidence on the record as a whole supports the ALJ's findings. Beginning with supportability, the ALJ pointed out that Ms. Moore did not begin treating Plaintiff until August 2019, many months after the December 31, 2018 alleged onset date and date last insured. Ms. Moore's opinion could not have been supported by relevant objective medical evidence because she neither treated Plaintiff at the relevant time (December 31, 2018) nor cited any evidence from that date to support the proffered limitations. Although evidence outside the insured time period can be relevant to a claimant's condition, *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006), Ms. Moore attributed Plaintiff's worsening psychiatric symptoms primarily to COVID, which Plaintiff contracted in July 2020, long after the relevant time period. In sum, although the ALJ did not use the term "supportability," that is not dispositive. Ms. Moore's opinion lacked supportability because she did not treat Plaintiff during the relevant time period.

Turning to consistency, the ALJ found that the marked and extreme limitations opined by Ms. Moore were not consistent with treatment records from the relevant time, which is the day of December 31, 2018. That finding is supported by substantial evidence of record. Treatment records near that date including findings of normal speech, normal language, a full affect, intact associations, some anxiousness, organized and goal-directed thought processes, limited insight and judgment, fair concentration and attention, no major concerns with recent or remote memory, a fair fund of knowledge, and orientation to time

and place. The ALJ included these findings elsewhere in the decision (R. 22, 24–25), and the ALJ's decision should be read as a whole.

In sum, Ms. Moore's opinion was not persuasive because it did not relate to the relevant time period and thus was not supported by relevant objective medical evidence and because it was not consistent with evidence from the relevant time period. Though the ALJ's discussion was concise, no more was necessary under the circumstances. The Court concludes that the ALJ adequately considered the supportability and consistency factors.

### B. The ALJ Erred in Articulating Her Consideration of Dr. Leong's and Dr. Paulson's Prior Administrative Medical Findings.

Plaintiff challenges the ALJ's consideration of the supportability and consistency factors when discussing the persuasiveness of Dr. Leong's and Dr. Paulson's prior administrative medical findings. (Pl.'s Mem. at 16.) The Court agrees that the ALJ erred.

To set the stage, the ALJ mistakenly used the term "support" in discussing how "consistent" the prior administrative medical findings were with evidence from other medical and nonmedical sources. (R. 26 (stating "the limitation to frequent right sided handling and fingering is supported by treatment history"; "further limitation to occasional handle/finger is not supported as the record does not show ongoing complaints or positive findings on exam"; "the record does support overhead reaching limitation based on records in early 2019"; and "limits on balance, climb ramps/stairs are not . . . supported in the record").) The Commissioner acknowledges the mistake. (Def.'s Br. at 6–7.) This mistake, alone, would not necessitate reversal; it is likely harmless. Moreover, notwithstanding the mistake, the Court finds that the ALJ adequately considered how consistent the prior

administrative medical findings were with evidence from other medical and nonmedical sources. The ALJ explained that Dr. Paulson's limitation to frequent right-hand handling and fingering was consistent with Plaintiff's treatment history, that Dr. Leong's limitation to occasional handling and fingering was not consistent with a lack of complaints or positive examination findings, and that overhead reaching, balancing, and climbing limitations were not consistent with "records." (R. 26.)

The error lies with the ALJ's consideration of the supportability factor. Despite the ALJ's use of the word "support" in the discussion, the ALJ did not explain how she considered the "relevan[ce of] the objective medical evidence and supporting explanations presented by" Dr. Leong and Dr. Paulson "to support [their] . . . prior administrative medical findings." 20 C.F.R. § 404.1520c(c)(1). The closest the ALJ came to considering the supportability factor was to remark that "limits on balance, climb ramps/stairs are not explained." (R. 26.) The Court finds this solitary clause inadequate, however, to satisfy the regulatory requirement for the ALJ to explain how she considered the supportability factor. The ALJ did not discuss the relevance of any "objective medical evidence" or "supporting explanations" presented by either Dr. Leong or Dr. Paulson to support their administrative medical findings. Nor did the ALJ characterize their findings as "vague." *Cf. Brian E. v. Kijakazi*, No. 22-CV-372 (ECT/JFD), 2023 WL 21920, at *2 (D. Minn. Jan. 3, 2023) ("The ALJ's determination that Dr. Phillippi's opinion was 'vague,' and thus less supportable, was an acceptable reason to find it less persuasive.").

Here, the ALJ's entire explanation of supportability was that "limits on balance, climb ramps/stairs are not explained." Although "brevity is not reversible error," *Grindley*

*v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021), the Court concludes that more explanation than was given here was required. The Commissioner's post-hoc explanation (*see* Def.'s Br. at 6–7) does not fill the gap. *See Stafford v. Kijakazi*, No. 4:20-CV-1011-NKL, 2022 WL 358061, at *4 (W.D. Mo. Feb. 7, 2022); *Shanda v. Colvin*, No. 14-CV-1838 (MJD/JSM), 2015 WL 4077511, at *30 (D. Minn. July 6, 2015) (citing *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 87 (1943)) (limiting judicial review of an agency's final decision to the bases given in the decision). "It is not the role of this Court to speculate on the reasons that might have supported the ALJ's decision or supply a reasoned basis for that decision that the ALJ never gave." *Stacey S. v. Saul*, No. 18-CV-3358 (ADM/TNL), 2020 WL 2441430, at *15 (D. Minn. Jan. 30, 2020), *R. & R. adopted*, 2020 WL 1271163 (D. Minn. Mar. 17, 2020). The ALJ must comply with 20 C.F.R. § 404.1520c in the first instance. Consequently, the Court finds that the ALJ did not adequately explain how she considered the supportability factor, and remand is appropriate.

Accordingly, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. The relief requested in Plaintiff's Brief (Dkt. No. 10) is **GRANTED**;
2. The relief requested in Defendant's Brief (Dkt. No. 13) is **DENIED**; and
3. The final decision of the Acting Commissioner of the Social Security Administration is **REVERSED** and the matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for additional consideration of the

supportability of Dr. Leong's and Dr. Paulson's prior administrative medical findings pursuant to 20 C.F.R. § 404.1520c.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date:  March 25, 2025                         *s/ John F. Docherty*
                                              JOHN F. DOCHERTY
                                              United States Magistrate Judge